IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
OXFORD DIVISION

PATRICK EVANS CLARK                                              PETITIONER

v.                                                          No. 3:19CV300-GHD-RP

MARSHALL TURNER, ET AL.                                        RESPONDENTS

### MEMORANDUM OPINION

This matter comes before the court on the *pro se* petition of Patrick Evans Clark for a writ of *habeas corpus* under 28 U.S.C. § 2254. The State has responded to the petition, and the parties have submitted additional briefing. The matter is ripe for resolution. For the reasons set forth below, the instant petition for a writ of *habeas corpus* will be denied.

### *Habeas Corpus* Relief Under 28 U.S.C. § 2254

The writ of *habeas corpus*, a challenge to the legal authority under which a person may be detained, is ancient. William F. Duker, *The English Origins of the Writ of Habeas Corpus: A Peculiar Path to Fame*, 53 N.Y.U. L. Rev. 983 (1978); Albert S. Glass, *Historical Aspects of Habeas Corpus*, 9 St. John's L. Rev. 55 (1934). It is "perhaps the most important writ known to the constitutional law of England," *Secretary of State for Home Affairs v. O'Brien*, A.C. 603, 609 (1923), and it is equally significant in the United States. Article I, § 9, of the Constitution ensures that the right of the writ of *habeas corpus* shall not be suspended, except when, in the case of rebellion or invasion, public safety may require it. *Habeas Corpus*, 20 Fed. Prac. & Proc. Deskbook § 56. Its use by the federal courts was authorized in Section 14 of the Judiciary Act of 1789. *Habeas corpus* principles developed over time in both English and American common law have since been codified:

The statutory provisions on *habeas corpus* appear as sections 2241 to 2255 of the

1948 Judicial Code. The recodification of that year set out important procedural limitations and additional procedural changes were added in 1966. The scope of the writ, insofar as the statutory language is concerned, remained essentially the same, however, until 1996, when Congress enacted the Antiterrorism and Effective Death Penalty Act, placing severe restrictions on the issuance of the writ for state prisoners and setting out special, new *habeas corpus* procedures for capital cases. The changes made by the 1996 legislation are the end product of decades of debate about *habeas corpus*.

*Id.* Under 28 U.S.C. § 2254, a federal court may issue the writ when a person is held in violation of the *federal* Constitution or laws, permitting a federal court to order the discharge of any person held by a *state* in violation of the supreme law of the land. *Frank v. Mangum*, 237 U.S. 309, 311, 35 S. Ct. 582, 588, 59 L. Ed. 969 (1915).

**Procedural Posture**

Patrick Evans Clark ( "Clark" or "Petitioner") is currently in the custody of the Mississippi Department of Corrections ("MDOC") and housed at the Mississippi State Penitentiary in Parchman, Mississippi. He was convicted of capital murder in the Circuit Court of Panola County, Mississippi. *See* State Court Record, Cause No. 2015-KA-01004-COA, Vol. 1, pp. 136, 141-42;[1] *see also* SCR, Vol. 4, p. 311-12. The trial court sentenced Clark as a habitual offender under Miss. Code Ann. § 99-19-83 to serve a term of life without parole in the custody of MDOC. SCR, Vol. 1, pp. 141-42; *see also* SCR, Vol. 4, p. 327.

Clark, through counsel, appealed and raised the following issues:

A.    Did the trial court err in requiring Clark to respond to cross-examination questions about a statement which had been excluded by pre-trial order?

B.    Whether Clark's trial counsel was constitutionally ineffective?

---

[1] References to the state court record from Clark's direct appeal of his conviction and sentence are designated herein as "SCR" with the appropriate volume and page number. Clark's post-conviction proceedings are likewise designated herein as "SCR" with the appropriate cause number.

1. Failure to object to other unrelated bad act evidence, including hearsay testimony about a separate burglary, evidence of Clark's possession of 3 extra weapons not used in the homicide, and no limiting instruction about other alleged bad act evidence;

2. Failure to seek a self-defense jury instruction; and

3. Failure to make a proffer re trial court not allowing Clark to be re-called as witness.

C. Whether it was error not to allow Clark to be recalled as a witness?

*See* SCR, Briefs, Brief of Appellant. Clark filed a *pro se* supplemental appellant's brief, wherein he

raised the following issues:

D. Clark's constitutional right to a fair trial was abridge[d] when he was forced to wear a react bandit stun pack during trial.

E. Whether the trial court erred by allowing the ex-coroner's investigator Donna Stevens to testify as to the autopsy report of Dr. Steven T. Hayne, the State Medical Examiner.

F. Whether the trial court erred in allowing the introduction of photographs of the victim autopsy and of the crime scene into evidence.

G. Whether Clark's second conviction and sentence under Miss. Code Ann. § 97-3-19(2)(e) for the alleged capital murder of Charlene Wren constituted Double Jeopardy.

H. Whether Clark was deprived of his rights to attorney-client confidentiality and his right to a fair trial when his defense file was wrongfully given to the State prosecution.

I. Whether the trial court abused its discretion when it allowed the prosecution to place inadmissible evidence of plea negotiations before the jury.

J. Whether Clark's challenge to the substantial sufficiency of the 2012 capital murder indictment as to count three requires reversal.

K. Whether the trial court erred in denying the defendant's pre-trial motion to recuse.

L. Whether the state has the right to a second chance at proving the habitual offender statute as opposed to Clark's right to be twice placed in jeopardy.

*See* SCR, Briefs, Supplemental Brief of the Appellant. The state court granted Clark's request to

supplement the record with transcripts from specified hearings, and he was allowed to file an amended

supplemental appellant's brief regarding any claims arising from the supplemental transcripts. *See* SCR, Case Folder. In his amended supplemental brief, he raised three issues:

    M.    Did the trial court err in failing to grant Clark's motion for change of venue?

    N.    Was Clark denied his right to a fair and impartial trial due to the introduction of immaterial, irrelevant, and highly prejudicial evidence?

    O.    Whether the trial court abused its discretion by denying Clark his constitutional right to be heard by himself?

*See* SCR, Briefs, Amended Supplemental Brief of Appellant. On March 7, 2017, Clark's conviction and sentence was affirmed by the Mississippi Court of Appeals. Exhibit A[2]; *see Clark v. State*, 233 So. 3d 832 (Miss. Ct. App. 2017), *reh'g denied*, Aug. 22, 2017, *cert. denied*, Dec. 14, 2017 (No. 2015-KA-00430-COA).

In his *pro se* motion for rehearing, Clark raised all issues previously raised, except ineffective assistance of counsel and whether it was error not to allow Clark to be recalled as a witness.[3] *See* SCR, Cause No. 2015-CT-430-SCT, *Certiorari* Folder. His motion for rehearing was denied, and he filed a *pro se* petition for writ of *certiorari*, raising five issues:

    A.    Whether the trial court erred in requiring Clark to respond to cross-examination questions about a statement that had been excluded by pre-trial order?

    B.    Whether Clark's counsel was constitutionally ineffective?

    C.    Whether the trial court violated Clark's right to confront the witnesses against him in allowing the coroner's medical examiner investigator to testify as to the State's medical examiner's autopsy report?

---

[2] The exhibits referenced in this memorandum opinion may be found attached to the State's Response to the petition.

[3] These two issues omitted from Clark's *pro se* motion for rehearing were previously raised by his counsel in the appellant's brief. *See* SCR, Briefs. As discussed below, these two omitted claims were later raised by Clark in his petition for writ of *certiorari*. Therefore, these claims, not raised in his motion for rehearing, were arguably not properly raised in his petition for writ of *certiorari*.

D. Whether the trial court erred in allowing questioning as to Clark's letter confession?

E. Whether cumulative error requires reversal of the conviction and sentence in this matter?

*See id.* As noted above, the Mississippi Supreme Court denied Clark's petition for writ of *certiorari* on December 14, 2017. *See id.*

On January 9, 2018, Clark, proceeding *pro se*, signed his *Application for Leave to Proceed in Trial Court* and *Motion for Post Conviction Collateral Relief to Vacate Judgment and Sentence* (the "PCR motion"), which was filed on January 16, 2018, in Mississippi Supreme Court Cause No. 2015-M-99. The Mississippi Supreme Court construed Clark's arguments to be that he did not waive indictment by a grand jury and his indictment failed to include the essential elements of capital murder, with the underlying felony of burglary. *See* SCR, Cause No. 2015-M-99. On April 11, 2018, the Mississippi Supreme Court granted Clark "leave to proceed in the trial court to determine whether his indictment includes the essential elements of capital murder, with the underlying felony of burglary." Exhibit B. The Mississippi Supreme Court denied Clark's remaining claim. *Id.*

Clark then filed his *Motion for Post Conviction Collateral Relief to Vacate Judgment and Sentence* in Panola County Circuit Court Cause No. CV2018-31SMP1 on April 24, 2018. The State responded, and Clark replied. *See* SCR, Cause No. 2018-CP-1232-COA, Vol. 1, pp. 11-36, 97-107. On August 15, 2018, the circuit court filed its *Order Denying Motion for Post Conviction Collateral Relief to Vacate Judgment and Sentence. See id.* at 141-45. Clark appealed the circuit court's order, and the Mississippi Court of Appeals affirmed the denial on June 4, 2019. *See* Exhibit C (*Clark v. State*, 285 So. 3d 668 (2019), *reh'g denied* (Sept. 17, 2019), *cert. denied,* 284 So. 3d 753 (Miss. 2019)). On December 30, 2019, Clark filed the instant *pro se* petition, raising the following grounds for relief:

- 5 -

**Ground One**: Did the trial court err in requiring Clark to respond to cross examination questions about a statement which had been excluded by pre-trial order?

**Ground Two**: Ineffective Assistance of Counsel for: 1) failing to object to unrelated other bad act evidence offered by the State; 2) failing to request a limiting instruction on such evidence; 3) failing to seek an instruction on self-defense; and 4) failing to make a proffer of Clark's prospective testimony after the trial court refused to allow Clark to be re-called as a witness.

**Ground Three**: Whether it was error not to allow Clark to be re-called as a witness?

**Ground Four**: Clark's constitutional rights to a fair trial was abridged when he was forced to wear a React Bandit stun pack during trial.

**Ground Five**: Whether the trial court committed error by allowing ex-coroner's investigator Donna Steven to testify as to Dr. Steven T. Hayne's state medical examiner autopsy report.

**Ground Six**: Whether the court erred in allowing the introduction of photographs of the victim's autopsy and of the crime scene into evidence.

**Ground Seven**: Whether Clark's second conviction and sentence under Miss. Code Ann. § 97-3-19(2)(e) for the alleged capital murder of Charlene Wren constituted double jeopardy.

**Ground Eight**: Whether Clark was deprived of his right to attorney client confidentiality and a fair trial when his defense file was wrongfully given to the state prosecution containing confidential information.

**Ground Nine**: Whether the trial court abused its discretion in allowing the prosecution to place inadmissible evidence that were precipitated by plea negotiation before the jury.

**Ground Ten**: Whether Clark's challenge to the substantial sufficiency of the 2012 capital murder indictment as to count 3 requires reversal.

**Ground Eleven**: Whether the trial court erred in denying Clark's pre-trial motion to recuse.

**Ground Twelve**: Whether the state has the right to a second chance at proving the habitual offender status of Clark as opposed to Clark's right not to be twice placed in jeopardy.

**Ground Thirteen**: Did the trial court err in failing to grant Clark's motion for change of venue?

**Ground Fourteen**: Clark was denied his right to a fair and impartial trial due to the introduction of immaterial, irrelevant, and highly prejudicial evidence.

**Ground Fifteen**: Whether the trial court abused its discretion by denying Clark his constitutional right to be heard by himself.

*See* ECF doc. 1.

### Grounds Three, Four, Six, Seven, Eight, Ten, Eleven, Twelve, Thirteen, Fourteen, and Fifteen: Precluded By the Doctrines of Procedural Default and Procedural Bar

If an inmate seeking *habeas corpus* relief fails to exhaust an issue in state court – and no more avenues exist to do so – under the doctrine of *procedural default* that issue cannot be raised in a federal *habeas corpus* proceeding. *Sones v. Hargett*, 61 F.3d 410, 416 (5th Cir. 1995). Similarly, federal courts have no jurisdiction to review a *habeas corpus* claim "if the last state court to consider that claim expressly relied on a state ground for denial of relief that is both independent of the merits of the federal claim and an adequate basis for the court's decision." *Roberts v. Thaler*, 681 F.3d 597, 604 (5th Cir. 2012). Thus, a federal court may not consider a *habeas corpus* claim when, "(1) a state court [has] declined to address [those] claims because the prisoner [has] failed to meet a state procedural requirement, and (2) the state judgment rests on independent and adequate state procedural grounds." *Maples v. Thomas*, —— U.S. ——, 132 S.Ct. 912, 922, 181 L.Ed.2d 807 (2012) (alterations in original) (internal quotation marks omitted). This doctrine is known as *procedural bar*.

A state procedural rule is "independent" when the state law ground for a decision is not "interwoven with the federal law." *Michigan v. Long*, 463 U.S. 1032, 1040, 103 S. Ct. 3469, 77 L. Ed. 2d 1201 (1983). A state law ground is interwoven with federal law if "the state has made application of the procedural bar depend on an antecedent ruling on federal law [such as] the

determination of whether federal constitutional error has been committed." *Ake v. Oklahoma*, 470 U.S. 68, 75, 105 S. Ct. 1087, 84 L. Ed. 2d 53 (1985); *see also* State court decision must not be interwoven with federal law, Federal Habeas Manual § 9B:24.

To determine the adequacy of the state procedural bar, this court must examine whether the state's highest court "has strictly or regularly applied it." *Stokes v. Anderson*, 123 F.3d 858, 860 (5th Cir. 1997) (*citing Lott v. Hargett*, 80 F.3d 161, 165 (5th Cir. 1996)). The petitioner, however, "bears the burden of showing that the state did not strictly or regularly follow a procedural bar around the time of his appeal" – and "must demonstrate that the state has failed to apply the procedural bar rule to claims identical or similar to those raised by the petitioner himself." *Id.*

### Cause and Prejudice – and Fundamental Miscarriage of Justice – As Ways to Overcome Procedural Bar

Whether a petitioner's claims are procedurally defaulted or procedurally barred, the way he may overcome these barriers is the same. First, he can overcome the procedural default or bar by showing cause for it – and actual prejudice from its application. To show cause, a petitioner must prove that an external impediment (one that could not be attributed to him) existed to prevent him from raising and discussing the claims as grounds for relief in state court. *See United States v. Flores*, 981 F.2d 231 (5th Cir. 1993). To establish prejudice, a petitioner must show that, but for the alleged error, the outcome of the proceeding would have been different. *Pickney v. Cain*, 337 F.3d 542 (5th Cir. 2003). Even if a petitioner fails to establish cause for his default and prejudice from its application, he may still overcome a procedural default or bar by showing that application of the bar would result in a fundamental miscarriage of justice. To show that such a miscarriage of justice would occur, a petitioner must prove that, "as a factual

- 8 -

matter, that he did not commit the crime of conviction." *Fairman v. Anderson,* 188 F.3d 635, 644 (5th Cir. 1999) (citing *Ward v. Cain,* 53 F.3d 106, 108 (5th Cir. 1995)). Further, he must support his allegations with new, reliable evidence – that was not presented at trial – and must show that it was "more likely than not that no reasonable juror would have convicted him in light of the new evidence." *Fairman,* 188 F.3d at 644 (citations omitted).

Mr. Clark did not present his claims in Grounds Three, Four, Six, Seven, Eight, Ten, Eleven, Twelve, Thirteen, Fourteen, and Fifteen in his petition for writ of *certiorari* filed in the Mississippi Supreme Court. *See* SCR, *Certiorari* Folder. A state prisoner must present his claims to a state supreme court in a petition for discretionary review when that review is part of the State's ordinary appellate review procedure. *O'Sullivan v. Boerckel*, 119 S.Ct. 1728 (1999); *see also Kessler v. Moore*, No. 3:02CV142OBN, 2005 WL 1593940, at *4-7 (S.D. Miss. June 15, 2005). Mr. Clark did not present all issues to the state's highest court – and thus failed to complete one full round of the state's established appellate review process. *O'Sullivan,* 119 S.Ct. at 1732; *see also Baldwin v. Reese*, 541 U.S. 27 (2004).

Further, he cannot now exhaust these grounds for relief, as the time for review has long passed. *See* Miss. R. App. P. 40 and 17(b). He thus waived review on the merits by the state's highest court. When "it is obvious that the unexhausted claim would be procedurally barred in state court, we will forego the needless 'judicial ping-pong' and hold the claim procedurally barred from habeas review." *Sones v. Hargett,* 61 F.3d 410, 416 (5th Cir. 1995) (quoting *Steele v. Young*, 11 F.3d 1518, 1524 (10th Cir. 1993)). Mr. Clark did not exhaust state remedies as to these claims, and the Mississippi Supreme Court would now find the claims procedurally barred; as such, there has been a procedural default for purposes of federal *habeas corpus* relief. *Finley v. Johnson*, 243 F.3d 215, 220 (5th Cir.

- 9 -

2001).

As discussed above, Mr. Clark already sought post-conviction collateral review; a second motion would be denied as a successive writ, and a return to state court would thus be fruitless. *See* Miss. Code Ann. § 99-39-27. As such, Mr. Clark's claims in Grounds Three, Four, Six, Seven, Eight, Ten, Eleven, Twelve, Thirteen, Fourteen, and Fifteen of the instant petition are procedurally defaulted under *Sones* and will be dismissed with prejudice. *See also Coleman v. Thompson*, 501 U.S. 722, 111 S.Ct. 2546 (1991).

Mr. Clark has shown neither cause for his default, nor that he would suffer prejudice if the court applied it. Federal courts may not review *habeas corpus* cases in which the state court applied an independent and adequate state procedural rule – unless the petitioner can demonstrate cause and actual prejudice. *See Coleman*, 501 U.S. at 750; *see also Martin v. Maxey*, 98 F.3d 844, 849 (5th Cir. 1996) (citations omitted). Mr. Clark cannot file another state motion for post-conviction collateral relief; it would be denied as a successive writ under Miss. Code Ann. § 99-39-27(9). The rule is independent because it is not intertwined with federal law. It is adequate because "Mississippi has strictly [and] regularly applied it." *Stokes v. Anderson*, 123 F.3d 858, 860 (5th Cir. 1997) (citing *Lott v. Hargett*, 80 F.3d 161, 165 (5th Cir. 1996)). Regarding Mississippi's post-conviction statutes, the Fifth Circuit held that, "[a]fter reviewing the cases in which the Mississippi courts have applied the UPCCRA, we do not find any evidence that the Mississippi courts have applied the UPPCRA in an inconsistent manner." *Moore v. Roberts*, 83 F.3d 699, 703 (5th Cir. 1996). Another successive-writ bar, found in Miss. Code Ann. § 99-39-23(6) (for cases filed originally in the trial court), is an independent and adequate state bar. *See Moawad v. Anderson*, 143 F.3d 942, 947 (5th Cir. 1998); *see also Lott*, 80 F.3d at 164-65. The difference in the bar found in § 99-39-23(6) and the one applicable

- 10 -

in the present case § 99-39-23(9), is the court of original jurisdiction – where the case must originate. The bar found in § 99-39-23(9) (applicable in the present case) applies to *cases originating in the appellate courts*, while the bar found in § 99-39-23(6) applies to *cases originating in the trial court*. Both subsections provide that a prior decision on a post-conviction motion or application "shall be a bar to a second or successive" petition or application. *See* Miss. Code Ann. §§ 99-39-23(6) and 99-39-27(9).

For the purposes of federal *habeas corpus* review, these bars to state court review are legally indistinguishable. As such, the successive writ bar applicable to cases originally filed in the appellate court (under Miss. Code Ann. § 99-39-27(9)) should likewise be considered an independent and adequate state bar, just as § 99-39-27(6) is. *See, e.g.*, *Rivera-Guadiana v. King*, No. 1:12CV395-HSO-RHW, 2014 WL 6951067, at *4 (S.D. Miss. Dec. 8, 2014) (citing *Coleman v. Thompson*, 501 U.S. 722, 750 (1991)) (other citations omitted); *see also Rucker v. Banks*, No. 3:17CV247-TSL-FKB, 2019 WL 3756481, at *2 (S.D. Miss. Mar. 18, 2019).

Mr. Clark has not shown "cause" under the "cause and prejudice" test so that this court may reach the merits of his claims despite the procedural bar because no external impediment prevented him from raising and discussing these claims as grounds for relief in a petition for writ of *certiorari* in state court. *See United States v. Flores*, 981 F.2d 231 (5th Cir. 1993); *Hill v. Black*, 932 F.2d 369 (5th Cir. 1991). Mr. Clark filed a *pro se* appellant's brief and an amended *pro se* appellant's brief – in addition to the brief filed by his appellate counsel. Further, Mr. Clark proceeded *pro se* in filing his motion for rehearing and petition for writ of *certiorari*. Hence, Mr. Clark could have raised whatever claims he wished during direct appeal – but chose not to raise the claims at issue here. As Mr. Clark has not shown "cause" for his default, the court need not consider whether there is actual prejudice.

- 11 -

*Martin,* 98 F.3d at 849; *Saahir v. Collins,* 956 F.2d 115, 118 (5th Cir. 1992).

Neither will the court's decision to apply the default in this case result in a "fundamental miscarriage of justice," as Mr. Clark has not shown that "as a factual matter, that he did not commit the crime of conviction." *Fairman v. Anderson,* 188 F.3d 635, 644 (5th Cir. 1999) (citing *Ward v. Cain,* 53 F.3d 106, 108 (5th Cir. 1995)). He has not provided new, reliable evidence that was not presented at trial, to show that it was "more likely than not that no reasonable juror would have convicted him in light of the new evidence." *Fairman,* 188 F.3d at 644 (citations omitted). Indeed, Mr. Clark has not alleged that he is actually innocent of the crime. Thus, he has not established that a fundamental miscarriage of justice would result if the court does not consider his claims on the merits. For these reasons, the court may not consider Mr. Clark's allegations in Grounds Three, Four, Six, Seven, Eight, Ten, Eleven, Twelve, Thirteen, Fourteen, and Fifteen of the instant petition.

### Grounds One, Two, Five, and Nine: Reviewed on the Merits in State Court

The Mississippi Supreme Court has already considered Grounds One, Two, Five, and Nine on the merits and decided those issues against the petitioner; hence, these claims are barred from *habeas corpus* review by the Antiterrorism and Effective Death Penalty Act, 28 U.S.C. § 2254(d), unless they meet one of its two exceptions:

> (d) An application for a writ of *habeas corpus* on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings *unless* the adjudication of the claim–
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in

the State court proceeding.

*Id.* (emphasis added).  The first exception, subsection (d)(1), applies to questions of law.  *Morris v. Cain*, 186 F.3d 581 (5ᵗʰ Cir. 2000).  The second exception, subsection (d)(2), applies to questions of fact.  *Lockhart v. Johnson*, 104 F.3d 54, 57 (5ᵗʰ Cir. 1997).  Since the petitioner's claims challenge both the application of law and the finding of fact, this court must consider the exceptions in both subsections.

Under subsection (d)(1), a petitioner's claim merits *habeas* review if its prior adjudication "resulted in a decision that was *contrary to*, or involved an *unreasonable application* of, clearly established Federal law." *Id.* (emphasis added).  A state court's decision is *contrary to* federal law if it arrives at a conclusion opposite to that reached by the United States Supreme Court on a question of law, or if it decides a case differently from the Supreme Court on a set of "materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 120 S.Ct. 1495, 1523 (2000).  A state court's decision involves an *unreasonable application of* federal law if it identifies the correct governing principle but unreasonably (not just incorrectly) applies that principle to facts of the prisoner's case; this application of law to facts must be *objectively* unreasonable.  *Id.* at 1521.  As discussed below, the petitioner has not shown that the Mississippi Supreme Court unreasonably applied the law to the facts, or that the court's decision contradicted federal law.  Accordingly, the exception in subsection (d)(1) does not apply to Grounds One, Two, Five, and Nine of the instant petition.

Nevertheless, under § 2254(d)(2) these grounds may still merit review if the facts to which the supreme court applied the law were determined unreasonably in light of the evidence presented.  Because the supreme court is presumed to have determined the facts reasonably, it is

the petitioner's burden to prove otherwise, and he must do so with clear and convincing evidence. *Miller v. Johnson*, 200 F.3d 274, 281 (5th Cir. 2000); 28 U.S.C. § 2254(e)(1). As discussed below, the petitioner has failed to meet this burden; as such, he cannot use subsection (d)(2) to move these claims beyond § 2254(d), which bars from *habeas corpus* review issues already decided on the merits.

**Facts of the Case**

The Mississippi Court of Appeals accurately summarized the facts of Mr. Clark's case:

¶ 3. Clark and Wren, both residents of Panola County, Mississippi, were involved in an on-again, off-again romantic relationship for approximately two years. Clark and Wren broke up a final time on August 26, 1998, at which time Wren was living with her twenty-three-year-old son, Tony, in a trailer located on property owned by Wren's mother. Clark testified at trial that he had also been living at Wren's trailer for about seven months prior to August 26, 1998, and that Wren had given him a key to the trailer. Clark testified that the relationship ultimately broke apart because Wren's mother and three sisters—who also lived on the property in a house next door to the trailer—demanded that Wren ask Clark to leave the property or else they would both be forced to leave. Tony, Wren's mother, and one of Wren's sisters contradicted Clark's testimony at trial, maintaining that Tony and Wren were the only two persons living at Wren's trailer in the seven months prior to August 26, 1998. Tony further testified that while Clark might occasionally spend a couple of nights at the trailer, he neither resided there nor owned a key.

¶ 4. On the evening of August 26, 1998, Clark went to Wren's trailer to remove his personal property. The witnesses differed in their accounts of what occurred in the nighttime hours between August 26, 1998, and August 27, 1998, during which Wren was shot and killed. Tony testified that around 12 midnight or 12:30 a.m., Clark called the trailer's home phone twice and asked to speak to Wren. Tony answered and told Clark that his mother was asleep. Shortly after, Clark drove his truck to Wren's trailer. Tony was standing in the driveway when Clark arrived. Clark asked Tony whether Wren was seeing anyone else, to which Tony replied that she was not. Clark then left. Tony went inside the trailer, locked the door—including the deadbolt—went to his bedroom, and got in bed.

¶ 5. Around 1:30 a.m., Clark again called the trailer's home phone and requested to speak to Wren. Again, Tony answered and told Clark that his mother was asleep. About an hour later, Tony heard a truck pull up in the yard. Someone exited the truck and began knocking on the door. Tony got out of bed and looked out to see Clark

- 14 -

walking off the trailer's porch, headed away from the door and back toward his truck. Tony thought Clark was leaving, so he lay down on the couch, which was located "right in front of the door" on which Clark had been knocking. The knocking suddenly resumed, but Tony, assuming that Clark had returned and would eventually leave, ignored it and stayed on the couch. Tony testified that the following then took place:

> [TONY]: ... Next thing I know I heard the screen door snatch open and the front door come flying open[;] he had kicked the door in.
>
> [THE PROSECUTOR]: Was—did he have a key to the house?
>
> [TONY]: No, sir. He didn't.
>
> [THE PROSECUTOR]: Did he force his way in?
>
> [TONY]: Yes, sir. He did.
>
> [THE PROSECUTOR]: You said he kicked the door open[;] what about the deadbolt?
>
> [TONY]: He kicked that in[;] the door flew in.
>
> [THE PROSECUTOR]: Did he break the door?
>
> [TONY]: Yes, sir. He broke the door.

Upon kicking in the door, Clark used his shoulder and back to force his way into the trailer. Tony testified that Clark was holding a twelve-gauge shotgun when he came through the doorway. Because Clark had forced his way in with his back to the trailer's interior, he did not immediately see Tony lying on the couch. Clark began heading toward Wren's bedroom; when he reached the kitchen—located about fifteen feet from the couch on which Tony was lying—Tony jumped up and yelled to warn his mother. Upon hearing Tony and noticing that he was in the room, Clark turned, cocked the gun, and shot at Tony; however, Clark missed Tony and instead shot the floor model television stand located by the door through which he had entered. Tony immediately ran out of the trailer to get help. As he was jumping off of the porch, he heard another two shots fired from inside the trailer. Tony testified that when he obtained help and finally returned to the trailer, he found his mother on the floor, dying from a gunshot wound to the chest.

¶ 6. At trial, Clark's account of these events differed greatly from Tony's. Clark testified that around 11:30 p.m. or midnight on August 26, 1998, he went to Wren's trailer to collect the last of his property, which he had been moving all evening. He testified that when he pulled up to the trailer, Tony was standing in the driveway, holding a cordless phone. Clark maintained that he saw Tony call Wren and warn her that Clark was in the driveway, which he deemed suspicious, but he proceeded to head

toward the trailer anyway. Clark testified that he used his own key to open the trailer door; however, immediately upon entering the trailer, he saw a "naked man just with his clothes in his arm" run out the back door. According to Clark, Wren then appeared "with her little pink gown on, got a bath towel stuck between her legs trying to convince me that she wasn't doing anything." Although angered by what he had seen, Clark said he exited the trailer and returned to his truck. When he reached the truck, he saw Tony standing there, "looking crazy, steady [sic] fumbling with his shirt like he had something." Feeling uncomfortable, Clark left the house, stopped at a convenience store, and called Wren twice on her home phone. According to Clark, Wren answered both times, and the two argued. Clark testified that he wanted to get the remainder of his property from Wren's trailer, but he was afraid to return because all of his firearms were in the trailer, and he felt that both Tony and the unidentified naked man posed a threat to him. Thus, Clark went to his mother's house and "got a couple of guns," to take with him to the trailer, "[n]ot to hurt anybody with," but to ensure his own protection "because [he] didn't know what to expect."

¶ 7. Clark testified that he returned to Wren's trailer around 1:30 a.m. or 2:00 a.m. on the morning of August 27, 1998. He drove up, exited his truck, went to the door of the trailer, and knocked for several minutes. When no one answered, he went to the side of the trailer and knocked on the air-conditioning unit in the window of Wren's bedroom. Again, no one answered, so he went back to his truck and got his key to Wren's trailer. Clark testified that he "went back and opened the door to the [trailer]," and "went in the [trailer]" using his key. He denied ever having kicked in the trailer door. Further, he maintained that he "did not go in that house with a gun in [his] hand"; rather, according to him, he left the recently obtained guns in his truck. Clark testified that only after he entered the trailer did he become armed: he grabbed the gun that he always kept behind the TV stand that was located right next to the door. Clark stated that he never intended to hurt anyone with the gun; rather, he was just retrieving it from the trailer, along with the rest of his personal property.

¶ 8. Clark testified that he did not see anyone in the trailer at the time that he entered. He testified that he walked into the kitchen to retrieve his microwave and deep freezer, and that as he bent over to unplug the deep freezer, he was hit in the head with a crystal ashtray. According to Clark, he turned and saw Tony standing several feet away with another ashtray in his hand. Clark testified that he grabbed the gun from his shoulder, but it accidentally discharged and shot the TV stand. At this point, Tony ran out of the trailer. Clark testified that he began trying to unload the gun when Wren suddenly appeared from her bedroom—about twelve to fifteen feet from where Clark was standing—cursing and screaming. Clark testified that Wren was standing with one hand on the doorknob to her bedroom and the other hand holding a "rather small gun," which Clark speculated to be a revolver. Clark said that at that time, the following took place:

She raised the gun up, [and] scared me[;] I'm just trying to get out of her way,

- 16 -

> but instinctively I just threw the gun up and I fired the gun and I went out the door. I was yelling back in the house at her, "Sit down somewhere. All I want to do is get my stuff." She never responded to me, so I was afraid to go back in the house....I don't know where Tony [is] at, you know, I don't know what's out there. And all of her family members live right around in the same little area.

When asked for more details regarding how he shot Wren, Clark maintained that it was an accident:

> After the gun went off and fired and hit the TV, I was in the process of unloading the gun and this is when she just bust [sic] out on me. So just by instinct when I turned around and I saw her [screaming], "... I'm going to kill you. I'm going to kill you ...." It was just my instincts to throw up—to throw the gun up[;] I just threw the gun up and I fired it. I never tried to kill Ms. Wren. I never had the intent to hurt [anybody], you know, but the incident did happen.
>
> [DEFENSE COUNSEL]: When you say you threw the gun up you mean you threw it—
>
> [CLARK]: I just threw it up over my shoulder. [I was] getting out of her way, out of her path. Just [instinctively,] I threw the gun up and fired the gun.
>
> [DEFENSE COUNSEL]: So when you shot[,] Ms. Wren was behind you?
>
> [CLARK]: Yes.
>
> [DEFENSE COUNSEL]: Okay. And you ran out of the house after that?
>
> [CLARK]: Right.

Clark testified that after running out of the trailer, he heard more gunshots coming from inside:

> I called for Tony a couple of times but nobody responded. Then I heard two to three gunshots. By the gun being fired in the house[,] my ears [were] ringing[;] I actually can't hear too [well], so [I was] looking to where the gunshot [was] coming from. I never [saw] any flashes. So this spooked me. So I feel like it was in my best interest to leave then and this is why I got in my truck and I left.

¶ 9. Clark testified that he knew the police were probably looking for him, so he drove to Senatobia and threw the guns he had brought with him from his mother's house out of the truck. However, he hid the gun used in the shooting under the hood of his truck. Sometime later on August 27, 1998, Clark was apprehended by the police and arrested.

- 17 -

¶ 10. Upon his arrest, Clark was immediately interviewed by Panola County Sheriff's Department Investigator Craig Sheley and Mississippi Bureau of Investigation Investigator Walter Davis. The interview was audio recorded; however, large portions of the tape were later deemed inaudible by the trial court. Days later, on September 2, 1998, Clark was interviewed by Panola County Sheriff David Bryan, now deceased.

¶ 11. On November 19, 1998, a Panola County grand jury indicted Clark, as a habitual offender, for burglary, grand larceny, and the capital murder of Wren. The charges of burglary and grand larceny were remanded to the files. On February 12, 1999, Clark pleaded guilty to the capital-murder charge and was sentenced to life imprisonment in the custody of the Mississippi Department of Corrections. While incarcerated, Clark filed three petitions for post-conviction relief (PCR), the third of which sought to have his indictment quashed and dismissed on the basis that it was defective. On May 29, 2012, the trial court granted Clark's motion and entered an order and judgment quashing and dismissing the indictment. The court vacated and set aside Clark's conviction and sentence for capital murder.

¶ 12. On August 1, 2012, a Panola County grand jury indicted Clark a second time for burglary, grand larceny, and capital murder as a habitual offender. As before, the charges of burglary and grand larceny were remanded to the files. Between his second indictment and trial on February 23–24, 2015, Clark filed a litany of motions, both through counsel and pro se. Clark's counsel filed the following motions: (1) a motion to dismiss the indictment on the basis that it constituted double jeopardy; (2) a motion for change of venue; (3) a motion for Clark to undergo a psychiatric examination; (4) a motion to suppress Clark's statement; (5) a motion to sever the counts in the indictment; (6) a motion in limine to prevent the elicitation or introduction of testimony or evidence as to Clark's felony convictions; (7) a motion in limine to exclude or limit photographic evidence and the autopsy report; (8) a motion in limine to exclude Clark's audio-recorded interview with Investigators Davis and Sheley because the recording was inaudible; and (9) a motion in limine to exclude Clark's audio-recorded interview with Sheriff Bryan because he had expired after Clark gave the interview. Of these motions, the following were granted: the motion to prevent the elicitation or introduction of testimony or evidence as to Clark's felony convictions; the motion to exclude Clark's audio-recorded interview with Investigators Davis and Sheley; and the motion to exclude Clark's audio-recorded interview with Sheriff Bryan.

¶ 13. In addition to the above motions filed by counsel, Clark filed the following motions, pro se: ( 1) a motion requesting to proceed pro se; (2) a motion to compel additional discovery and sanctions; (3) a motion to dismiss the indictment; (4) a "Petition of Notice," alleging that the prosecutor and a staff member wrongfully examined his defense file; and (5) a motion for the trial judge to recuse himself. The court issued an "Order Denying Defendant's Motions," which remarked on Clark's

- 18 -

motion requesting to proceed pro se and motion to compel additional discovery, and denied Clark's motion to dismiss the indictment and "Petition of Notice." During a pretrial hearing, Clark presented evidence as to why the trial judge should recuse himself, and the court denied his motion.

¶ 14. Clark's trial lasted from February 23 to February 24, 2015; a jury found him guilty and convicted him of capital murder. The trial judge sentenced Clark, as a violent habitual offender, to a term of life imprisonment without the possibility of parole.

*Clark*, 233 So. 3d at 838-43. The court will discuss additional facts, as necessary.

### Ground One: The Trial Court Erred in Requiring Clark to Respond to Cross-Examination Regarding a Statement Excluded in the Pre-Trial Order

In Ground One, Mr. Clark argues that the trial court erred in requiring him to respond to cross-examination questions regarding a statement which had been excluded by pretrial order – because the interviewer, Sheriff David Bryan, had died and was thus unavailable to testify. ECF doc. 1 at 6. Clark, through counsel, raised this issue in his appellant's brief on direct appeal. *See* SCR, Brief of Appellant. The Mississippi Court of Appeals discussed its review of this issue under a state law evidentiary standard and found that, while the trial court erred in allowing the State to question Clark regarding his interview with Sheriff Bryan, the error was harmless in light of other testimony presented at trial supporting the same facts. *Clark*, 233 So. 3d at 845 (¶ ¶ 18-19). Clark then raised this issue in his petition for writ of *certiorari*, which the Mississippi Supreme Court denied. *See* SCR, Cause No. 2015-CT-430-SCT, *Certiorari* Folder.

Clark's trial counsel filed a "Motion in Limine to Prevent the Eliciting or the Introducing of a Statement Allegedly Given by the Defendant at Trial," arguing that Clark's statement to Sheriff David M. Bryan should be excluded, as Bryan passed away prior to trial and Clark would be unable to confront and cross-examine Bryan. SCR, Vol. 1, pp. 80-93. The trial court granted

- 19 -

this motion and ordered that the "State shall be prohibited from introducing into evidence at the trial of this cause or the soliciting of any evidence regarding the Defendant's alleged statement to the late Sheriff Bryan unless the Defendant places the issue into evidence." *Id*. at 94. Clark's trial counsel also filed a "Motion in Limine to Exclude Defendant's Audio Recorded Interview," which sought exclusion of the audio recorded interview conducted by Investigators Walter Davis and Craig Sheley. *Id*. at 71-79. The trial court also granted this motion. *Id*. at 99.

At trial, when the State questioned Clark on cross-examination as to how the door to Wren's trailer was kicked in, Clark asked, "Why don't you let the jury listen to the tape. Let the jury listen to the tape." SCR, Vol. 3, p. 256. The discussion continued, and the State responded "You know why? Because you asked the jury not be able to hear the tape and we agreed to it." *Id*. The State requested to question Clark about the tape because "[h]e's brought this up and I think it's fair for me to be able to ask him about the other tape that we could not play because David is deceased, Sheriff Bryan is deceased. And that's the tape, I think he's talking about." *Id*. at 258. The trial court allowed the State to question Clark regarding Sheriff Bryan's tape, over defense counsel's objection. *Id*. at 258-59. During questioning, Clark clarified that he was not referring to the tape-recorded interview conducted by Sheriff Bryan. *Id*. at 259-60.

The Mississippi Court of Appeals discussed this issue at length and found:

¶ 18. After reviewing the trial transcript at length, we find that Clark did not open the door regarding the taped interview with Sheriff Bryan; thus, the trial court erred in allowing the State to question Clark as to that interview. As previously mentioned, Investigator Sheley testified as to his and Investigator Davis's taped interview with Clark, where Clark allegedly said he "forced his way into the residence." Shortly thereafter, Clark testified on direct examination that he never made those remarks to Investigators Sheley and Davis, and to "let the jury listen to the tape." On cross-examination, the State asked Clark how the door to Wren's trailer "got kicked in"; Clark again replied, "let the jury listen to the tape." It is clear to this Court that Clark was referencing the tape of his interview with Investigators Sheley and Davis. During

- 20 -

Clark's direct examination and cross-examination, the only mention made of the interview with Sheriff Bryan was when the State twice remarked that Clark made two separate interviews: one with Investigators Sheley and Davis and one with Sheriff Bryan. Clark never referenced his interview with Sheriff Bryan or its contents, and the context of the trial transcript makes it clear that Clark sought to "let the jury listen to the tape" of his interview with Investigators Sheley and Davis, not the interview with Sheriff Bryan.

¶ 19. However, the trial court's error in allowing the State to question Clark regarding his interview with Sheriff Bryan was harmless. During its questioning, the State remarked that Clark had told Sheriff Bryan that he brought a gun into Wren's trailer. Clark stated that he did not recall making that assertion. Further, Clark testified that he did not bring a gun into Wren's trailer; rather, he argued that he entered the trailer empty-handed and, once inside, grabbed a gun that he regularly kept behind the TV stand by the door. The jury heard both Clark's testimony and the testimony of Tony, Wren's son, who maintained that he witnessed Clark enter Wren's trailer with a twelve-gauge shotgun in his hand. The jury also heard testimony by Investigator Sheley, who said that Clark told Investigators Sheley and Davis that he was in possession of a shotgun at the time that he forced his way into Wren's trailer. The jury ultimately believed the testimony of Tony and Investigator Sheley over that of Clark, finding that Clark entered Wren's trailer with a gun in his hand. Based on the testimonies of Investigator Sheley and Tony, it is abundantly clear that the trial court's error, in allowing the interrogation of Clark concerning his interview with Sheriff Bryan, was harmless, and does not warrant reversal.

*Clark*, 233 So. 3d at 845 (¶ ¶ 18-19).

This court may not review a challenge to the state court's ruling on the admissibility of evidence because rulings on evidentiary matters are issues of state law. *See Dickerson v. Guste*, 932 F.2d 1142, 1145 (5th Cir. 1991) (citing *Cook v. Morrill*, 783 F.2d 593, 596 (5th Cir. 1986)). Errors solely of state law will not support *habeas corpus* relief. *Estelle v. McGuire*, 502 U.S. 62, 67 (1991) (quoting *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990)); *see also Pulley v. Harris*, 465 U.S. 37, 41 (1984) ("A federal court may not issue the writ on the basis of a perceived error of state law.") Federal courts "'do not sit as a 'super' state supreme court' in [a *habeas corpus* ] proceeding to review errors under state law." *Dickerson*, 932 F.2d at 1145 (quoting *Martin v. Wainwright*, 428 F.2d 356, 357 (5th Cir. 1970)).

"A state court's evidentiary rulings present cognizable *habeas* claims only if they run afoul of a specific constitutional right or render the petitioner's trial fundamentally unfair." *Johnson v. Puckett*, 176 F.3d 809, 820 (5th Cir. 1999) (citing *Cupit v. Whitley*, 28 F.3d 532, 536 (5th Cir. 1994)). "[I]n reviewing state court evidentiary rulings, the federal *habeas* court's role 'is limited to determining whether a trial judge's error is so extreme that it constituted a denial of fundamental fairness' under the Due Process Clause." *Castillo v. Johnson*, 141 F.3d 218, 222 (5th Cir. 1998) (citations omitted); *see also Jackson v. Johnson*, 194 F.3d 641, 656 (5th Cir. 1999). The "erroneous admission of prejudicial testimony does not justify *habeas* relief unless the evidence played a 'crucial, critical, and highly significant' role in the jury's determination." *Jackson*, 194 F.3d at 656.

As set forth above, the Mississippi Court of Appeals found that the jury heard Clark's testimony regarding the contents of the tape, as well as the testimony of Tony Wren and Investigator Sheley, which contradicted Clark's testimony, and the jury ultimately believed Wren and Sheley. Hence, Clark's testimony regarding the contents of the tape did not play a crucial, critical, or highly significant role in the jury's determination of guilt, and he is not entitled to *habeas corpus* on this issue.

The state court did not find a Confrontation Clause error in allowing questions regarding Clark's interview with the deceased Sheriff; such violations "are subject to harmless error analysis." *Fratta v. Quarterman*, 536 F.3d 485, 507-8 (5th Cir. 2008); *see also Horn v. Quarterman*, 508 F.3d 306, 322 n. 24 (5th Cir. 2007) (citations omitted); *see also Delaware v. Van Arsdall*, 475 U.S. 673, 684 (1986). To analyze whether an error is harmless in a petition for a writ of *habeas corpus*, the court must determine "whether the error 'had substantial and injurious effect or influence in determining the jury's verdict.'" *Fratta*, 536 F.3d at 508 (quoting *Kotteakos v. United States*, 328 U.S. 750, 776

(1946)). As discussed above, the Mississippi Court of Appeals found that the trial court erred in allowing the State to question Clark about Sheriff Bryan's recorded statement; however, the court determined the error to be harmless, finding "it … abundantly clear that the trial court's error, in allowing the interrogation of Clark concerning his interview with Sheriff Bryan, was harmless, and does not warrant reversal." *Clark*, 233 So. 3d at 845 (¶ 19). For these reasons, the state court's decision was not contrary to, nor an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States. This claim is without merit and will be denied.

### Ground Two:  Ineffective Assistance of Counsel

In Ground Two, Clark argues that trial counsel was ineffective for:  (1) failing to object to unrelated other bad act evidence offered by the State; (2) failing to request a limiting instruction on that evidence; (3) failing to seek an instruction on self-defense; and (4) failing to make a proffer of Clark's prospective testimony after the trial court refused to allow Clark to be re-called as a witness. ECF doc. 1 at 7. The court must address claims of ineffective assistance of counsel under the two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). To prove that defense counsel was ineffective, the petitioner must show that counsel's performance was deficient and that the deficiency resulted in prejudice to her defense. Under the deficiency prong of the test, the petitioner must show that counsel made errors so serious that he was not functioning as the "counsel" guaranteed by the Sixth Amendment. *Strickland*, 466 U.S. at 687. The court must analyze counsel's actions based upon the circumstances at the time – and must not use the crystal clarity of hindsight. *Lavernia v. Lynaugh*, 845 F.2d 493, 498 (5th Cir. 1988). The petitioner "must overcome the presumption that, under the circumstances, the challenged action 'might be considered

sound trial strategy.'" *Strickland*, 466 U.S. at 689 (citation omitted). To prove prejudice, the petitioner must demonstrate that the result of the proceedings would have been different or that counsel's performance rendered the result of the proceeding fundamentally unfair or unreliable. *Vuong v. Scott*, 62 F.3d 673, 685 (5th Cir. 1995), *cert. denied*, 116 S.Ct. 557 (1995); *Lockhart v. Fretwell*, 506 U.S. 364, 369 (1993); *Sharp v. Johnson*, 107 F.3d 282, 286 n.9 (5th Cir. 1997). "When §2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard." *Harrington v. Richter*, 131 S.Ct. 770, 788 (2011); *Premo v. Moore*, 131 S.Ct. 733 (2011).

### Counsel's Failure to Object to Unrelated Other Bad Acts Evidence Offered by the State – and Failure to Request a Limiting Instruction on That Bad Acts Evidence.

Mr. Clark argues that trial counsel was ineffective for failing to object to the State's introduction of evidence that Clark stole guns from his mother's home prior to Wren's death – and failing to request a limiting instruction regarding that evidence. Clark, through counsel, raised these issues on direct appeal, and the Mississippi Court of Appeals found them to be without merit. *See Clark*, 233 So. 3d at 846-7 (¶ ¶ 22-25). Clark raised these issues again in his petition for writ of *certiorari*, which the Mississippi Supreme Court denied. *See* SCR, Cause No. 2015-CT-430-SCT, *Certiorari* Folder.

The Grand Jury returned a three-count indictment charging Clark as a habitual offender for burglary (Count 1), grand larceny (Count 2), and capital murder (Count 3). SCR, Vol. 1, pp. 10-11. The indictment alleged that the burglary and grand larceny occurred on August 26, 1998, and that the capital murder occurred on August 27, 1998. *Id.* The trial proceeded on the charge of capital murder (Count 3), and the charges of burglary (Count 1) and grand larceny (Count 2) were remanded to the file. SCR, Case Folder, p. 214. At trial, Investigator Craig Sheley, who was with the Panola County

Sheriff's Office at the time of the crime, testified that, during the course of his investigation, he learned that some guns belonging to Clark's stepfather had turned up missing, which included "two .22's, a 20 gauge, and a 12 gauge." SCR, Vol. 3, p. 183. Sheley testified that a 12-gauge shotgun was used to kill Charlene Wren. *Id*. at 183-4. Later, Sheley testified that Clark said during his initial statement that he had taken four guns from his stepfather. *Id*. at 194. According to Sheley, Tate County officials told him that they recovered three guns, a 20 gauge and two .22's, in the same area Clark said he dumped all the guns – and were confirmed to be the same guns taken from Clark's stepfather's residence. *Id*. at 196-7. Clark also testified that he went to his mother's house to get some guns. *Id*. at 236-37, 241.

The admission of "other crimes" evidence does not violate due process if the state makes a strong showing of guilt – and if the other offense is "rationally connected with the offense charged." *Wood v. Quarterman*, 503 F.3d 408, 415 (5th Cir. 2007). Clark raised this issue on direct appeal, and the State argued that "even if Clark's counsel had objected to introduction of the bad-act evidence at issue, the trial court would have declined to exclude it because it involved information necessary to '[t]ell the complete story so as not to confuse the jury.'" *Clark*, 233 So. 3d at 846 (¶ 22) (citing *Palmer v. State*, 939 So. 2d 792, 795 (¶ 9 (Miss. 2006)). The Mississippi Court of Appeals agreed and found:

> [A]s Wren's death was caused by a fatal shot from a twelve-gauge shotgun, the evidence that Clark took guns from his mother's home was relevant to show that Clark was in possession of a twelve-gauge shotgun and to corroborate Tony's testimony that Clark entered Wren's trailer holding the shotgun.

*Id*. at 847 (¶ 23). Investigator Sheley's testimony made this clear at trial. As such, an objection to bad-act evidence would have been fruitless, as that evidence and the offense charged were directly connected. Counsel cannot be deemed ineffective for failing to lodge a meritless objection. *See Clark*

*v. Collins*, 19 F. 3d 959, 966 (5th Cir. 1994) ("Failure to raise meritless objections is not ineffective lawyering, it is the very opposite.") The trial court would have rejected a limiting instruction regarding bad-act evidence for the same reasons.

Finally, the decision regarding whether to pursue a particular jury instruction is a matter of trial strategy, which is "virtually unchallengeable" through federal *habeas corpus* proceedings:

> strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable ….

*Strickland*, 466 U.S. at 690. For these reasons, the state court's decision regarding these claims of ineffective assistance of trial counsel was neither contrary to, nor an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States. These claims for relief will be denied.

### Counsel's Decision Not to Request an Instruction on Self-Defense

Clark argues that trial counsel was ineffective for choosing not to seek an instruction on self-defense. Clark, through counsel, raised this issue on direct appeal, and the Mississippi Court of Appeals found it to be without merit. *Clark*, 233 So. 3d at 847 (¶¶ 22-25). Clark then raised this issue in his petition for *certiorari* review, which the Mississippi Supreme Court denied. *See* SCR, Cause No. 2015-CT-430-SCT, *Certiorari* Folder.

As stated above, Clark raised this issue on direct appeal, and the State argued that "the evidence did not support the need for a self-defense instruction because no self-defense instruction is required for felony murder under" Mississippi law. *Clark*, 233 So. 3d at 846-7 (¶ 22) (citing *Layne v. State*, 542 So. 2d 237, 243 (Miss. 1989); *Taylor v. State*, 597 So. 2d 192, 194 (Miss. 1992)). The Mississippi Court of Appeals agreed, finding

> Clark was not entitled to a self-defense instruction because he was engaged in the commission of a felony – burglary of a dwelling with the intent to commit the

- 26 -

crime of assault therein – when he shot Wren. Even if the jury had not found that
Clark was committing burglary when he shot Wren, a self-defense instruction
would have been improper pursuant to *Taylor*[, *supra*,] because Clark alleged
throughout trial that his shooting of Wren was accidental. Clark cannot suddenly
maintain that he was deprived of a self-defense instruction when he never asserted
that he shot Wren in self-defense.

*Id.*

Clark repeatedly testified at trial that he accidentally shot Wren. *See* SCR, Vol. 3, pp. 226-65.

While he testified several times at trial that Wren also had a gun and threatened to kill him, nothing

else in the record supported such an assertion or a self-defense instruction. *See id.* at 238-44, 261.

The decision regarding whether to pursue a particular jury instruction is a matter of trial

strategy. *See Thomas, supra* (citing *Druery*, supra); *Jones v. Estelle, supra* (citing *United States v.*

*Carter, supra*). In addition, the state court found that, based on state law and the facts of this case,

Clark was not entitled to a self-defense instruction. Counsel cannot be ineffective for failing to request

a jury instruction that, under state law, was not supported by the evidence and testimony. As such, the

state court's decision on this claim of ineffective assistance of trial counsel was neither contrary to, nor

an unreasonable application of, clearly established federal law as determined by the Supreme Court of

the United States. This claim for relief will be denied.

### Counsel's Decision Not to Make a Proffer of Clark's Prospective Testimony After the Trial Court Refused to Allow Him to Be Recalled as a Witness.

Mr. Clark argues that his trial counsel was ineffective for failing to make a proffer of his

testimony after the trial court did not allow him to be re-called as a witness. Clark, through

counsel, raised this issue on direct appeal, and the Mississippi Court of Appeals found it to be

without merit. *Clark*, 233 So. 3d at 847 (¶ 24). He then raised this issue in his petition for writ

of *certiorari*, which the Mississippi Supreme Court denied. *See* SCR, Cause No. 2015-CT-430-SCT, *Certiorari* Folder.

At trial, Clark was the third out of six witnesses to testify, and he was questioned on direct, cross, and re-direct examination. SCR, Vol. 3, pp. 226-65. The witnesses who testified after him were questioned on direct examination – and were available to be questioned on cross and re-direct examination. *Id.* at 266-275. After the sixth witness testified, Clark instructed his counsel to recall him as a witness. *Id.* at 275. The trial court denied Clark's request to be recalled in accordance with the rules of procedure, as "your witness only testifies one time. They don't get to testify five or six times." *Id.* at 275. In its denial of Clark's motion for judgment notwithstanding the verdict, or in the alternative, a new trial, the trial court stated that "I wasn't going to let Mr. Clark testify two or three, four times just because he wanted to and I did that based upon Rule of Evidence 611." SCR, Vol. 4, p. 331.

On appeal, the Mississippi Court of Appeals found that it was within the trial judge's discretion whether to permit a witness to be recalled to the stand after his testimony is complete, citing Miss. R. Evid. 611(a). *Clark*, 233 So. 3d at 848 (¶ 27). The Mississippi Court of Appeals further found that "Clark offered no evidence that testifying a second time would have provided any additional, helpful information to the jury." *Id.* As stated above, the court found that Clark's argument that his counsel was ineffective for failing to make a proffer of his proposed testimony was without merit. *Id.* at 847 (¶ 24). Further, he has provided no evidence regarding the content of additional testimony he would have provided – nor stated how that testimony would have assisted the jury or altered the outcome of the trial in light of the evidence presented at trial. As such, the state court's decision regarding this claim of ineffective assistance of counsel was neither contrary to, nor an

unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States.

A review of the record reflects that trial counsel's performance was objectively reasonable, and Clark cannot overcome the presumption that counsel's actions were trial strategy. Therefore, he has not shown that trial counsel's performance was constitutionally deficient or that he was prejudiced as a result. Further, even if Clark could show that trial counsel's performance was deficient, he has not shown resulting prejudice, as required in *habeas corpus* review. *See Bridge,* 838 F.2d at 773. Mr. Clark has not shown that the Mississippi Court of Appeals' decision was "contrary to, or an unreasonable application of, the standards, provided by the clearly established federal law (*Strickland*), for succeeding on his [ineffective assistance of counsel] claim[s]." *See Busby,* 359 F.3d at 717. Further, the appellate court's decision was not based on an unreasonable determination of the facts in light of the evidence presented. The petitioner is not entitled to relief as to his claims of ineffective assistance of counsel in Ground Two of his petition.

### Ground Five: Violation of the Right to Confront Witnesses

In Ground Five, Mr. Clark alleges that the trial court erred by allowing the ex-coroner's investigator, Donna Stevens, to testify as to Dr. Steven T. Hayne's state medical examiner autopsy report. Mr. Clark argues that Ms. Stevens' testimony violated the Confrontation Clause. Clark raised this issue in his *pro se* supplemental appellant's brief, and the Mississippi Court of Appeals analyzed the issue under plain error review (because Clark did not make a contemporaneous objection at trial). *Clark,* 233 So. 3d at 848 (¶ ¶ 30-33). The court found no Confrontation Clause violation. *Id.* at ¶ 32. Clark raised the issue once more in his petition for writ of *certiorari,* which the Mississippi Supreme Court denied. *See* SCR, Cause No. 2015-CT-430-SCT, *Certiorari* Folder.

At trial, Donna Stevens testified that, at the time of the crime, she was the elected coroner medical examiner investigator for Panola County, and she was called to the crime scene on August 27, 1998. SCR, Vol. 3, p. 159. She described the crime scene and testified that "[w]hen [she] got to the scene on Tom Floyd Road[, she] found a deceased female not breathing in a bedroom lying facedown," and "[s]he had a gunshot wound to her chest." *Id.* Stevens further testified that she accompanied the victim's body to Jackson for an autopsy, and she was present for the autopsy Dr. Hayne performed. *Id.* at 159-60. Stevens described the photographs taken during autopsy, which showed a gunshot wound to the right upper chest. *Id.* at 160. She testified that Dr. Hayne provided her with the medical examiner's report, which concluded the cause of death to be a gunshot wound to the chest. *Id.* at 162-63. No objection was made at trial regarding Stevens's testimony.

As stated above, the Mississippi Court of Appeals reviewed this issue for plain error, as "[a]lleged errors that were not raised at trial are procedurally barred on appeal; however, a defendant who fails to make a contemporaneous objection may 'rely on plain error to raise the assignment on appeal.'" *Clark*, 233 So. 3d at 848 (¶ 30) (citing *Dobbins v. State*, 766 So. 2d 29, 31 (Miss. Ct. App. 2000)). The court then analyzed Clark's right to confront witnesses against him under the United States and Mississippi Constitutions, as follows:

> "The United States Supreme Court has held that the Sixth Amendment Confrontation Clause bars the admission of 'testimonial statements' made by a witness who does not appear at trial, unless the witness is unavailable and the defendant had a prior opportunity to cross-examine him." *Id.* (citing *Jenkins* [*v. State*], 102 So.3d [1062,] 1066 (¶ 9)). "Forensic laboratory reports created specifically to serve as evidence against the accused at trial are among the 'core class of testimonial statements' governed by the Confrontation Clause." *Id.* (citing *Melendez–Diaz v. Massachusetts*, 557 U.S. 305, 310, 129 S.Ct. 2527, 174 L.Ed.2d 314 (2009)). However, the Mississippi Supreme Court has held that, "[b]y contrast, when the testifying witness is a court-accepted expert in the relevant field who participated in the analysis in some

capacity, such as by performing procedural checks, then the testifying witness's testimony does not violate a defendant's Sixth Amendment rights." *Id.* at (¶ 12) (quoting *McGowen v. State*, 859 So.2d 320, 339 (¶ 68) (Miss. 2003)). Appellate courts are to apply a two-part test when determining whether a witness satisfies the defendant's right to confrontation:

> First, we ask whether the witness has "intimate knowledge" of the particular report, even if the witness was not the primary analyst or did not perform the analysis firsthand. Second, we ask whether the witness was "actively involved in the production" of the report at issue. We require a witness to be knowledgeable about both the underlying analysis and the report itself to satisfy the protections of the Confrontation Clause.

*England [v. State]*, 195 So.3d [830,] 833–34 (¶ 12) (quoting *Jenkins*, 102 So.3d at 1067 (¶ 13)).

*Clark*, 233 So. 3d at 849 (¶ 31). The court found that "Stevens both personally identified Wren's body at the crime scene and authorized and observed Dr. Hayne's autopsy of the body." *Id.* at ¶ 32. The court further found that Stevens "had intimate knowledge of the report offered at trial because she personally observed it taking place, in addition to the fact that she personally identified the body at the crime scene." *Id.* The court alternatively found that, "even if this Court were to find that Stevens did not have intimate knowledge sufficient to allow her to testify as to the final autopsy report, the admission of the report constitutes harmless error, as there is ample evidence to show that Wren's cause of death was a shotgun blast to her chest." *Id.* at ¶ 33.

As found by the Mississippi Court of Appeals, Clark did not contemporaneously object to Stevens' testimony at trial; as such, any alleged error was procedurally barred from review on appeal, except for plain error review. Thus, alternatively, this issue is also procedurally barred from *habeas corpus* review. *Sayre, supra* at 634. Failure to present an issue to the trial court is an independent and adequate state procedural bar. *Smith v. Black*, 970 F.2d 1383, 1387 (5th Cir.1992); *see also Day v. King*, No: 1:03CV624-DMR-JMR, 2006 WL 2541600, at *4 (S.D. Miss. Aug. 31, 2006) (For a list of

Mississippi cases holding issues procedurally barred for failure to lodge a contemporaneous objection or present the issue to the trial court.)

Under a plain error analysis, the Mississippi Court of Appeals found no Confrontation Clause violation. Further, Ms. Stevens' testimony reflects that she was present at the crime scene, identified the body there, and was present during and participated in the autopsy. As the state court found, a great deal of evidence other than Ms. Stevens' testimony revealed the victim's cause of death. Hence, any error in permitting Stevens to testify regarding the autopsy report was harmless because it had no "substantial and injurious effect or influence in determining the jury's verdict." *Fratta,* 536 F.3d at 508 (quoting *Kotteakos,* 328 U.S. at 776).

This court cannot consider whether a confrontation clause violation occurred because the issue is procedurally barred (as Clark made no contemporaneous objection at trial). However, even if the court were to reach that issue, the state court's decision finding no violation was neither contrary to, nor an unreasonable application of, clearly established law according to the Supreme Court of the United States. Therefore, Mr. Clark's claims in Ground Five will be denied.

### Ground Nine: Introduction of Statements from Plea Negotiations into Evidence

In Ground Nine, Mr. Clark argues that the trial court abused its discretion in allowing the prosecution to place before the jury evidence arising out of plea negotiations. He raised this issue on direct appeal, and the Mississippi Court of Appeals found that "Clark failed to object to the introduction of this evidence at trial," which barred the issue on appeal, "unless Clark [wa]s able to show that there was an error and that the error resulted in a manifest miscarriage of justice." *Clark,* 233 So. 3d at 852 (¶ 41). The court considered the issue and found harmless error. *Id.* at ¶ 43. Clark then raised the issue in his petition for writ of certiorari, which the Mississippi Supreme Court denied.

*See* SCR, Cause No. 2015-CT-430-SCT, *Certiorari* Folder.

During Clark's cross-examination the State asked him about a letter he had written to the District Attorney. SCR, Vol. 3, pp. 246-7. Clark read from a portion of the letter that stated, "I'm not making any excuses for my action as to the shooting death of my girlfriend, Charlene Wren, 16 years ago. I take full responsibility for my actions regardless of the facts and circumstances of this case." *Id.* at 247. He further testified that he wanted to "clear this up," stating that the "letter was asking you for a plea bargain, this is what this letter was." *Id.* While "[t]he prosecution used the letter as a prior inconsistent statement to impeach Clark, in light of the various inconsistencies in Clark's testimony," the Mississippi Court of Appeals found:

> It is somewhat ambiguous whether this portion of the letter can be considered impeachment, as Clark never directly maintained that he did not shoot Wren; rather, he asserted consistently that he *may* have shot her. Thus, we cannot find that the State's reference to the letter was necessarily proper as impeachment evidence.
>
> However, we find that, even if the reference to the letter was improper, such an error would be harmless. Clark essentially asserted in his letter the same thing he maintained throughout the entire trial: that he could possibly have been responsible for Wren's death. Thus, we find that admission of this evidence, even if improper, constitutes harmless error.

*Clark*, 233 So. 3d at 852 (¶ ¶ 42-3).

Clark did not contemporaneously object to the letter at trial, and the issue was barred on appeal, as Clark failed to prove an error that resulted in a manifest miscarriage of justice. For these reasons, the court cannot consider the issue. As set forth above in the discussion of Ground Five, "[w]hen a state court declines to hear a prisoner's federal claims because the prisoner failed to fulfill a state procedural requirement, federal *habeas* is generally barred if the state procedural rule is independent and adequate to support the judgement." *Sayre, supra* (citing *Coleman*,

*supra*; *Amos*, *supra*).  The failure to present an issue to the trial court is an independent and adequate state procedural bar.  *Smith v. Black*, *supra*; *see also Day*, *supra*.

The court cannot consider the claim for another reason, as well:  A claim challenging the state court's ruling on the admissibility of certain evidence is precluded from *habeas corpus* review because rulings of state courts on evidentiary matters are solely issues of state law.  *See Dickerson*, 932 F.2d at 1145 (citing *Cook*, 783 F.2d at 596).  As the "trial judge's error [was not] so extreme that it constituted a denial of fundamental fairness under the Due Process Clause," the error in permitting reference to the letter was harmless, and *habeas corpus* relief is not available. *Castillo*, 141 F.3d at 222 (citations and internal quotations omitted).  The erroneous admission of prejudicial testimony justifies *habeas corpus* relief only when the evidence played a "crucial, critical, and highly significant" role in the conviction.  *Jackson*, 194 F.3d at 656.  The Mississippi Court of Appeals found that any error arising out of reference to the letter was harmless, as Clark took the same position in both the letter and his trial testimony – that "he could possibly have been responsible for Wren's death."  *Clark*, 233 So. 3d at 852 (¶ 43).

This claim is thus procedurally barred because Clark did not make a contemporaneous objection at trial.  In addition, the state court's determination regarding evidentiary matters is a matter of state law and does not merit federal *habeas corpus* relief.  This ground for relief must therefore be denied.

Under 28 U.S.C. § 2254(d)(1), the court must defer to state court decisions on claims adjudicated on the merits.  On *habeas corpus* review, a federal court must not disturb a state court's application of law to the facts unless the state court decision was contrary to, or an unreasonable application of, clearly established federal law, as determined by the United States Supreme Court.

Regarding Grounds One, Two, Five, and Nine of the instant petition, the petitioner did not make this showing. As such, Mr. Clark is not entitled to *habeas corpus* relief as to any of these claims. *See* 28 U.S.C. § 2254(d)(1); *see also Gachot v. Stalder,* 298 F.3d 414, 421 (5th Cir. 2002).

## Conclusion

For the reasons set forth above, the instant petition for a writ of *habeas corpus* will be denied. The petitioner procedurally defaulted Grounds Three, Four, Six, Seven, Eight, Ten, Eleven, Twelve, Thirteen, Fourteen, and Fifteen. The state court decided Grounds One, Two, Five, and Nine on the merits, which precludes federals *habeas corpus* review unless the state court decision was contrary to, or an unreasonable application of, clearly established federal law, as determined by the United States Supreme Court. The petitioner has not made that showing; as such, the court will deny his claims in Grounds One, Two, Five, and Nine. A final judgment consistent with this memorandum opinion will issue today.

**SO ORDERED**, this, the 30th day of November, 2021.

_____

SENIOR UNITED STATES DISTRICT JUDGE